OPINION
Mary Lark appeals from a final judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations Division.
Mary and Felix Lark were married in Kentucky in 1968. No children were born of the marriage, but Mrs. Lark had several children from a previous marriage with whom Mr. Lark became close. Mr. Lark moved out of the marital residence at 1561 Cornell Drive in Dayton in April 1981. He filed a complaint for divorce in May 1998.
Mr. Lark visited the home on Cornell Drive during the parties' lengthy separation, but he did not live there during this period. Mr. Lark paid the mortgage, the taxes, and the insurance on the house throughout most of the separation. In 1994, Mr. and Mrs. Lark took out a loan against the house in the amount of $37,000 to make some needed repairs to the house, to pay off the land contract on the house, and to pay delinquent property taxes. Out of the $37,000, Mr. Lark also received approximately $10,000 and applied an additional $6,790 of the loan proceeds toward his personal debts. At the time of the divorce hearing, the unpaid balance on the loan was approximately $26,000 and the appraised value of the house was $50,000.
The trial court entered its final judgment and decree of divorce on March 26, 1999. The trial court divided the marital assets and debts by awarding the marital residence to Mrs. Lark subject to the mortgage. The trial court reasoned that Mrs. Lark's assumption of Mr. Lark's portion of the mortgage debt offset his share of the equity in the house. The trial court also awarded spousal support to Mrs. Lark indefinitely in the amount of $1,000 per month and retained jurisdiction over this matter.
Mrs. Lark raises three assignments of error on appeal.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FOLLOW THE APPROPRIATE STATUE [SIC] IN DETERMINING THE DURATION OF THE MARRIAGE FOR PURPOSES OF PROPERTY DIVISION.
Mrs. Lark contends that the trial court did not comply with R.C. 3105.171(G), which required it to make findings of fact regarding its distribution of marital assets and to specify the time period which it had determined to constitute the marriage. Although Mrs. Lark frames this argument as if the trial court did not make the requisite findings, the substance of her argument actually challenges the reasonableness of the trial court's findings. Specifically, Mrs. Lark argues that there was no credible evidence "to support the Court's selection of April 1981 as the termination date of this marriage." Mrs. Lark also contends that the trial court's treatment of the debt on the marital residence was inconsistent with its determination of when the marriage had ended.
Mr. Lark, Mrs. Lark, and one of Mrs. Lark's daughters each testified that Mr. Lark had moved out of the marital residence in April 1981 and that the Larks had not lived as husband and wife at any point thereafter. R.C. 3105.171(A)(2) gives the trial court some discretion in determining the length of a marriage. For purposes of division of property, "during the marriage" is generally defined as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a). However, R.C.3105.171(A)(2)(b) permits the trial court to use other dates in determining what is marital property and in dividing that property if it finds that the use of the date of marriage or the date of the final hearing is inequitable. Given the unusually long period of time that elapsed between the Larks' separation and their divorce proceedings-over seventeen years-the trial court did not err in determining that it would have been inequitable to treat the marriage as if it had continued until 1999 for purposes of property division.
Mrs. Lark contends that the trial court's reliance on the 1998 value of the Cornell Drive residence in dividing the marital property was inconsistent with the court's determination that the marriage had ended in 1981 for purposes of property division. Mrs. Lark contends that the 1981 value of the home should have been used. Mrs. Lark's argument ignores the fact that the parties' incurred significant indebtedness on the property subsequent to 1981. The $37,000 loan procured by the Larks in 1994 was used, in large part, to make needed improvements to the marital residence. Undoubtedly, the loan affected the Larks' equity in the property, and the home improvements affected the value of the property. Because these post-separation changes in the status of the house were intertwined with the trial court's division of marital property, the trial court did not err in relying on the value of the house and the debt owed at the time of the hearing in its division of the property. Moreover, Mrs. Lark presented no evidence regarding the value of the house or the parties' equity in the house at the time of their separation.
The first assignment of error is overruled.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND IT DID NOT FOLLOW THE STATUTORY MANDATE IN REGARD TO THE DIVISION OF MARITAL PROPERTY.
Mrs. Lark claims that the trial court's division of marital property did not comport with its express finding that the division of the marital assets should be approximately equal. Mrs. Lark contends that the trial court's order was illogical and that it did not divide the property equally.
It is undisputed that the parties took out a $37,000 mortgage on the marital residence in 1994. Mr. Lark admitted that, of this amount, he had used $6,790 to satisfy personal debts incurred after the separation. He also testified that, of the approximately $10,000 in loan proceeds that was disbursed to him, he had given $6,000 to Mrs. Lark in two payments of $4,000 and $2,000. The rest of the money was apparently used to pay off the Larks' land contract on the house, to make repairs to the house, and to pay property taxes. Mr. Lark provided fairly detailed documentation of the expenditures related to the house, which totaled over $19,000. He also testified that he had spent $400 of the loan proceeds on Mrs. Lark's grandchildren.
When asked about the loan proceeds, Mrs. Lark repeatedly admitted that Mr. Lark had taken care of the repairs to their home and that she had had "no idea" how much various repairs had cost. She also admitted that the loan proceeds had been used to pay off the land contract. With regard to money that had changed hands between them, Mrs. Lark first testified that she had not received any money, then recalled that she had received $2,000.
The trial court had the opportunity to view the demeanor, gestures, and attitude of the witnesses and thus was in the best position to weigh the credibility of their testimony. Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Although Mrs. Lark disputed Mr. Larks' claim that he had given her $6,000, Mr. Larks' testimony about the use of the loan proceeds was otherwise unrefuted, and the trial court could have reasonably credited Mr. Lark's testimony over Mrs. Lark's testimony on this matter. Mr. Larks' testimony supported the conclusion that, out of the $37,000 loan, approximately $20,000 had been spent on the marital residence and the grandchildren, and Mr. and Mrs. Lark had received about $10,800 and $6,000 respectively for their personal expenses. Based on these numbers, the fact that Mrs. Lark had resided in the marital residence during the parties' lengthy separation while Mr. Lark had paid the mortgage, and the fact that the trial court intended to award the marital residence to Mrs. Lark, the trial court could have reasonably concluded that the parties should share responsibility equally for the outstanding balance on the loan. The outstanding balance on the loan was $26,000 at the time of the hearing. Because the marital residence was valued at $50,000 at the time of the hearing, the Larks' equity in the home was $24,000. Mr. Lark's share of the debt was $13,000, and his share of the equity was $12,000. The trial court reasonably and prudently elected to offset these amounts by awarding Mrs. Lark the house subject to the outstanding debt, rather than requiring the sale of the home, refinancing of the debt, or other more cumbersome means of effectuating the property division.
The second assignment of error is overruled.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT AWARDING THE DEFENDANT ADEQUATE SPOUSAL SUPPORT.
Mrs. Lark claims that the trial court awarded her an insufficient amount of spousal support. She contends, in part, that the trial court's conclusions about her ability to earn rental income were not supported by the record and that the trial court failed to consider her loss of medical coverage through Mr. Lark's employment.
In determining how much spousal support was appropriate and reasonable, the trial court found that Mrs. Lark received $3,000 in rental income and had the potential to earn $3,600 more in rental income each year. Mrs. Lark testified that she owned two pieces of rental property-a single family home and a duplex. At the time of the hearing, Mrs. Lark was permitting her granddaughter to live in the single family home, which had previously rented for $300 per month, without paying rent. Mrs. Lark testified, however, that she intended to start charging her granddaughter $300 per month. Thus, the trial court reasonably concluded that Mrs. Lark had $3,600 in potential rental income from the single family unit. Regarding the duplex, Mrs. Lark testified that both sides were currently rented and that she charged $250 per month per unit, but she indicated that one of the tenants was not paying rent and would have to be evicted. The $3,000 in current rental income cited by the trial court apparently represented the $250 per month paid by one of the duplex occupants. Thus, the trial court's findings about rental income are wholly supported by Mrs. Lark's own testimony. In fact, based on her testimony, the trial court could have reasonably concluded that Mrs. Lark's potential rental income was $6,600 per year, rather than $3,600, on the assumption that she would evict the duplex tenant who was not paying rent and replace her with a paying tenant. As such, Mrs. Lark's contention that the trial court abused its discretion in calculating her rental income is without merit.
Mrs. Lark's contention that the trial court failed to consider her loss of medical coverage through her husband's employment is refuted by the trial court's entry, which refers specifically to "the annual anticipated cost to defendant for health insurance" as a factor in awarding spousal support.
The Larks' standard of living appears to have been modest. Mrs. Lark was eligible for Social Security benefits, although she had not yet applied for them, and she had rental income as discussed supra. Pursuant to the property division, she was also entitled to a portion of Mr. Lark's pension. Although she testified that she had medical problems, Mrs. Lark admitted that she had not been to a doctor in two years, and she did not claim that she was unable to work. She had worked part-time in recent years as an in-home assistant for elderly people. The trial court properly considered Mrs. Lark's potential income from rentals, from Mr. Lark's pension plan, from employment, and from Social Security in awarding Mrs. Lark $1,000 in spousal support. In our view, this amount was appropriate and reasonable under the circumstances.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Gary C. Schaengold
David M. Franceschelli
Alex V. DeMarco
Hon. V. Michael Brigner